UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES D. STEFFENS,

    Plaintiff,

v.                                                                          Case No. 8:19-cv-01940-KKM-AAS

CHRISTOPHER NOCCO,
in his Official Capacity
as PASCO COUNTY SHERIFF,

    Defendant.
_____

# ORDER

Defendant Christopher Nocco filed a motion to dismiss (Doc. 33) Plaintiff James Steffens's amended complaint (Doc. 32) on the grounds it was an impermissible shotgun pleading, suffered from improper claim splitting, and failed to state claims upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). For the below reasons, the Court denies the motion in part and grants the motion in part.

## I. Background

Plaintiff was an employee at the Pasco County Sheriff's Office, and Defendant is the Pasco County Sheriff. (Doc. 32 at 2–3). During his time as an employee, Plaintiff alleges that members of the Pasco County Sheriff's Office discriminated against him in multiple ways, largely because Plaintiff was in a biracial romantic relationship with another coworker. (Doc. 32 at 7). Plaintiff alleges he was transferred to a less desirable

job (Doc. 32 at 5), denied educational opportunities (Doc. 32 at 6), and harassed because of his relationship (Doc. 32 at 8). This culminated in Plaintiff being forced to resign as part of Defendant's plan to have Plaintiff publicly take the blame for an incident regarding one of Plaintiff's subordinates. (Doc. 32 at 17–21).

After being dismissed, Plaintiff brought this case pro se against numerous government officials for alleged unlawful employment practices. (Doc. 1). The Court dismissed Plaintiff's original complaint sua sponte as an impermissible shotgun pleading. (Doc. 30 at 3). The Court noted multiple problems with Plaintiff's complaint, including incorporating every preceding paragraph into each claim (Doc. 30 at 3), asserting multiple claims without specifying exactly which defendants were accused of what conduct (Doc. 30 at 4), and including numerous irrelevant and conclusory details (Doc. 30 at 4).

The Court afforded Plaintiff an opportunity to file an amended complaint that ameliorates these issues. (Doc. 30 at 5); *see also Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). Plaintiff, with the assistance of counsel, (Doc. 29), filed an amended complaint on July 8, 2020. (Doc. 32). The now-operative complaint removed all defendants except Pasco County Sheriff Christopher Nocco in his official capacity. Defendant moves to dismiss the amended complaint (Doc. 33) on multiple grounds, arguing that the complaint remains a shotgun pleading, is a consequence of impermissible claim splitting, and fails to state a claim upon which proper relief can be granted. Each of these arguments will be addressed in turn.

## II. Analysis

### A. Shotgun Pleading

Defendant first argues that the amended complaint should be dismissed because it remains a shotgun pleading. (Doc. 33 at 3–5). A shotgun pleading is any pleading which "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Although shotgun pleadings can take many forms, the Eleventh Circuit has identified four "rough types" of categories of shotgun pleadings. *Id.* at 1321–23. The category most relevant here is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Although Defendant points out many problems in Plaintiff's amended complaint, a complaint should be dismissed as an impermissible shotgun pleading only when "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Id.* at 1325 (emphasis in original) (quoting *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). Because the amended complaint's flaws do not rise to this exacting standard, the Court declines to dismiss it as an impermissible shotgun pleading.

First, the amended complaint is significantly improved from the original. The amended complaint largely addresses the defects identified in the Court's first dismissal order. (Doc. 30). With Nocco as the only Defendant, each count is clearer and more

3

focused; the number of factual paragraphs is reduced; and *some* of the conclusory or vague paragraphs are now absent. That is not to say that an improved complaint is always acceptable, *see, e.g.*, *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021)*,* but the changes made here are sufficient.

Second, many of the critiques offered by Defendant center around the legal errors in Plaintiff's complaint. While these issues may in fact be "dispositive in a Rule 12(b)(6) analysis, . . . [they are] not dispositive of the separate question of whether the claims in this complaint are so poorly pleaded that they warrant a dismissal [as a shotgun pleading]." *Weiland*, 792 F.3d at 1325. Thus, many of Defendant's arguments against certain counts are better addressed as a Rule 12(b)(6) matter, *see infra* Section C. 1–4 (addressing the counts that Defendant moved to dismiss under that rule), and not as an argument to prove a shotgun pleading.

While the amended complaint is not so incomprehensible as to make it a shotgun pleading, it is far from the quality commensurate of a plaintiff represented by counsel. The Court expects that future papers by Plaintiff's counsel will not share the amended complaint's pervasive grammatical, spelling, and formatting errors.

### B. Claim Splitting

Defendant next argues that the amended complaint should be dismissed because it is an impermissible instance of claim splitting with another case in which Steffens is a plaintiff. (Doc. 33 at 5). The rule against claim splitting "requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Vanover v.*

4

*NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)). In assessing whether improper claim splitting has occurred, a court asks: (1) whether the cases involve the same parties; and (2) whether the cases are based on the same nucleus of operative facts. *See Shannon v. Nat'l R.R. Passenger Corp.*, 780 F. App'x 777, 779 (11th Cir. 2019). Because Steffens is no longer a plaintiff in the *Squitieri* lawsuit, (Doc. 34 at 4), those cases no longer involve the same parties and this argument fails the first prong. Therefore, the Court denies Defendant's claim splitting argument.

### C. Failure to State Claims under Rule 12(b)(6)

Defendant moves to dismiss Plaintiff's 42 U.S.C. § 1985 claim, defamation claim, gender discrimination claim, and Florida Civil Rights Act of 1992 (FCRA) claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Court grants Defendant's motion to dismiss Plaintiff's § 1985 claim and defamation claim because Plaintiff fails to state a claim. Because Plaintiff did not plead a gender discrimination claim and a FCRA claim, any argument as to these two claims is moot.

When reviewing motion to dismiss under Rule 12(b)(6) claims, the Court will accept "the factual allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020) (quoting *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)). That being said, "[c]onclusory allegations, unwarranted factual deductions or legal

5

conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Plaintiff must provide enough factual support to raise a claim for relief above the mere speculative level and to indicate the presence of the necessary elements to prove his claim. *See Watts v. Fla. Intern. Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 1. Count I: Title VII

In its motion to dismiss, Defendant argues that Plaintiff cannot state a viable claim of gender discrimination under Title VII because his claim is untimely and Plaintiff failed to exhaust his administrative remedies. (Doc. 33 at 9–10). But Plaintiff did not bring a sex discrimination claim as a standalone count in his amended complaint (Doc. 32), and states that "he has not made a claim for gender discrimination under Title VII" in his response in opposition to Defendant's motion to dismiss. (Doc. 34 at 6–7).[1] Thus, the Court finds that Plaintiff never pleaded a sex discrimination claim under Title VII in his amended complaint, meaning that any argument on the nonexistent claim is moot.

Plaintiff also brought a race discrimination claim under Title VII, alleging that he faced adverse action because of his race and bi-racial relationship. (Doc. 32 at 23).

---

[1] One cannot fault Defendant too much for the confusion, as the amended complaint's first substantive paragraph explains that "[t]his action seeks . . . [relief] for Defendant's unlawful employment practices on the basis of race and *sex* in violation of Title VII." (Doc. 32 at 1) (emphasis added).

6

Because Defendant did not challenge the claim of racial discrimination or move for its dismissal, the Court will not dismiss the claim at this juncture.[2]

### 2. Count III: 42 U.S.C. § 1985

Plaintiff alleges that Defendant, alongside four other "Sherriff's Office employees" (Doc. 32 at 25) conspired to deprive Plaintiff of his civil rights in violation of 42 U.S.C. § 1985, presumably subsection (3), which authorizes recovery of damages "[i]f two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." While the Court is not clear on the exact contours of this conspiracy based on the amended complaint's allegations, it seems to center around the multiple coworkers and supervisors who denied Plaintiff educational opportunities, forced his resignation, and publicly blamed him for his subordinate's actions.

Plaintiff's argument fails because it is barred by the intracorporate conspiracy doctrine. "Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation," as long as the employees are acting within the scope of their employment. *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th

---

[2] Defendant also does not move to dismiss under Rule 12(b)(6) Plaintiff's § 1983 claim or his retaliation claim. Accordingly, the Court will not address whether Plaintiff adequately pleaded those claims.

Cir. 2000); *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010). The intracorporate conspiracy doctrine applies with equal force to public entities. *See Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001); *Dickerson*, 200 F.3d at 768.

Plaintiff alleges that "NOCCO, through his actions and those of Sherriff's Office employees" conspired to deprive Plaintiff of his rights. (Doc. 32 at 25). Because this allegation includes members only within the Pasco County Sherriff's Office, their actions are attributed to a single entity and therefore fall within the intracorporate conspiracy doctrine. The Eleventh Circuit has specifically applied the intracorporate conspiracy doctrine to allegations involving multiple employees within a sheriff's office, confirming the application to this circumstance. *See Tillman v. Orange Cnty.*, 519 F. App'x 632, 636 (11th Cir. 2013) (finding that the intracorporate conspiracy doctrine applied to claims against employees of the Orange County Sheriff's Office).

Plaintiff argues that the intracorporate conspiracy doctrine is inapplicable because the conspirators' alleged racial and employment discrimination places their actions outside the scope of their official duties. (Doc. 34 at 4–6). This argument misunderstands the exception. The proper inquiry is not whether the person's job functions include violating constitutional rights, but rather "whether the employee . . . was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business." *Grider*, 618 F.3d at 1261. It is clear that a sheriff's scope of authority includes the ability to promote and reassign his employees to different

8

positions within the office. Therefore, the Defendant was acting within the scope of his authority, and the intracorporate conspiracy doctrine remains applicable.

Finally, Plaintiff points to a case where the First Circuit declined to apply the intracorporate conspiracy doctrine to a § 1985(3) claim where the defendants' actions "involved a series of acts over time going well beyond simple ratification of a managerial decision by directors." *Stathos v. Bowden*, 728 F.2d 15, 21 (1st Cir. 1984). The Eleventh Circuit has previously declined to rule on the validity of this possible exception, *see Dickerson*, 200 F.3d at 770, and this Court is not aware of any subsequent decisions on the matter. Viewing this as a matter of first impression within the Eleventh Circuit, this Court will not apply the "series of acts" exception.

First, there are reasons to doubt the underlying logic of *Stathos*. As one court has noted, there is some "conceptual difficulty with the idea evidently propounded by these cases that the number of discriminatory acts can create a conspiracy although each act is committed by a single entity. The general rule remains that a single entity cannot conspire with itself." *Coley v. M & M Mars, Inc.*, 461 F. Supp. 1073, 1076 (M.D. Ga. 1978). If a conspiracy requires more than one entity, then the number of actions involved seems irrelevant. Moreover, this exception is not justified by § 1985's text, which only speaks of "any act" that causes injury to the Plaintiff. *See also Intracorporate Conspiracies Under 42 U.S.C. § 1985(c)*, 92 Harv. L. Rev. 470, 472–73 (1978). Judge Frank Easterbrook has offered similar critiques and demonstrated the inconsistent and illogical outcomes from such a position. *See Travis v. Gary Cmty. Mental Health Ctr., Inc.*,

9

921 F.2d 108, 111 (7th Cir. 1990) ("A single corporate executive who made multiple decisions would not be a 'conspiracy'; why then would two discriminatory or retaliatory acts approved by a plurality of corporate executives be a conspiracy, if a single act by the same executives is not?").

Second, other in-circuit district courts have declined to apply the series-of-actions exception. *See Jackman v. 20th Jud. Cir. Ct. Admin.*, No. 2:19-cv-828-FtM-38MRM, 2020 WL 6321921, at *3 (M.D. Fla. Oct. 28, 2020) (collecting cases). These decisions are bolstered by the numerous examples where the Eleventh Circuit—without raising the issue—consistently applied the intracorporate conspiracy doctrine to cases involving multiple actions. *See, e.g., Grider,* 618 F.3d 1240 (dismissing a § 1985 conspiracy claim from a bar owner who alleged police surveillance, numerous overcrowding citations, and discriminatory occupancy calculations); *Nassar v. Fla. Dep't of Agric.*, 754 F. App'x 903, 904 (11th Cir. 2018) (dismissing a § 1985 claim from an individual who claimed government officials conspired to "conduct near-constant, intrusive surveillance of her" on numerous occasions); *Holloman v. Jacksonville Hous. Auth.,* No. 06-10108, 2007 WL 245555, at *1 (11th Cir. 2007) (affirming district court's grant of a motion for summary judgment where an individual claimed government officials evicted and denied him housing subsidies for five years in violation of § 1985). While this Court does not interpret these cases as officially rejecting the series-of-actions exception, it is evidence that the Eleventh Circuit does not read the scope of the intracorporate conspiracy doctrine as narrowly as the First Circuit did.

10

Lastly, the factual circumstances in *Stathos* are different from this case in important ways. The First Circuit placed great weight on the fact that the defendants were government commissioners, each jointly endowed with substantial discretion and control over the situation. As then-Judge Stephen Breyer wrote, the defendants' actions "consisted of joint discretionary activity—with many words and several deeds—engaged in by each of the Commissioners." *Stathos*, 728 F.2d at 21. This coordinated approach among equals is not the same as this case, where Defendant supervises all the other alleged co-conspirators in a clear chain of command. Moreover, the *Stathos* Court emphasized the series of coordinated discussions and decisions among the defendants to justify the exception. *See id.* at 20. Here, Plaintiff does not, except in very conclusory ways, allege anything near the same level of coordination as in *Stathos*. Three of the alleged conspirators, Harrington, Peake, and Moore, play only a minor role. This dynamic does not match the one is *Stathos*, undermining the applicability of the exception here.

### 3. Count V: Defamation Claim

Plaintiff argues that Defendant defamed him under Florida state defamation law by publicly blaming Plaintiff for the illegal actions of Plaintiff's subordinate. Plaintiff alleges that "NOCCO stated publicly to the media outlets that STEFFENS was a 'systemic failure' as a Captain and that STEFFENS 'did nothing' to investigate the actions of Pasco Sheriff's Office Deputy Mercado." (Doc. 32 at 20).

11

This claim fails because Defendant had absolute privilege for his statements. In exercising supplemental jurisdiction over a state defamation claim, this Court will apply the relevant state law to any issue not governed by substantive federal law. *See Flava Works, Inc. v. City of Miami*, 609 F.3d 1233, 1237 (11th Cir. 2010); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Here, the Florida state law on absolute privilege is clear. "[S]tatements made by officials of all branches of government in connection with their official duties [are] absolutely privileged." *Hauser v. Urchisin*, 231 So. 2d 6, 8 (Fla. 1970). This privilege ensures the free flow of information from public officials to the public, and applies, no matter "[h]owever false or malicious or badly motivated the accusation may be." *Id.* Florida Courts have routinely held that this immunity covers media briefings conducted by law enforcement officers. *See, e.g.*, *Stephens v. Geoghegan*, 702 So. 2d 517, 523 (Fla. 2d DCA 1997); *Crowder v. Barbati*, 987 So. 2d 166, 167 (Fla. 4th DCA 2008) ("This absolute privilege extends to a sheriff for comments made in the course of the sheriff's duties.")

Plaintiff responds by arguing that this immunity does not apply because Defendant's actions were neither "a judicial activity nor a legislative activity." (Doc. 34 at 6). This argument misreads a single sentence in *Hauser*—the only case Plaintiff cites for support. *Hauser* itself states that public accountability requires that "[a]ny public servant should expect that those having authority to discharge him will [publicly] explain their reasons for such dismissal." *Hauser*, 231 So. 2d at 8. The issue in *Hauser* centered around public statements made by the city commissioner about removing the city

prosecutor. As in *Hauser*, this case centers around a government official publicly explaining why he chose to remove an employee, so the same protections should apply. Thus, because Defendant's statements are protected by absolute privilege, Plaintiff's defamation claim fails.

### 4. Florida Civil Rights Act of 1992

In his motion to dismiss, Defendant moves to dismiss Plaintiff's FCRA claim. (Doc. 33 at 10–12). In Plaintiff's response to Defendant's motion to dismiss, Plaintiff states that he "has not made a claim under the Florida Civil Rights Act, and any argument for the dismissal of a non-existent claim is moot." (Doc 34 at 7). Whether Plaintiff intended to bring the claim and now realizes it fails or his counsel was too hurried to edit out extraneous material, Plaintiff never included a FCRA claim as a standalone count in his amended complaint. (Doc. 32). Thus, the Court finds that Plaintiff never pleaded a FCRA claim and concludes that any argument on the nonexistent claim is moot.[3]

Therefore, it is **ORDERED**:

1. Defendant's motion to dismiss is **DENIED IN PART** and **GRANTED IN PART**. The shotgun pleading objection and the claim-splitting objection are **DENIED**, and Defendant's motion to dismiss Counts III and V is

---

[3] As previously noted, Defendant cannot be faulted for this confusion, as the amended complaint states that Plaintiff seeks damages for "Defendant's unlawful employment practices . . . in violation of the Florida Civil Rights Act of 1992" in its introductory paragraph and invokes the jurisdiction of the FCRA in a later paragraph. (Doc. 32 at 1, 3).

13

**GRANTED**. Defendant's arguments as to claims on gender discrimination and the FCRA are **DENIED AS MOOT**.

2. Counts III (42 U.S.C. § 1985) and V (defamation) are **DISMISSED WITH PREJUDICE**.

3. This Matter will proceed only on Count I (race discrimination under Title VII), Count II (42 U.S.C. § 1983), and Count IV (retaliation).

**ORDERED** in Tampa, Florida, on March 17, 2021.

Kathryn Kimball Mizelle
United States District Judge

14