## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JAMES D. STEFFENS,

     Plaintiff,

v.                                  Case No: 8:19-cv-1940-KKM-AAS

CHRISTOPHER NOCCO, in his official
Capacity as Pasco County Sheriff,

     Defendant.
_____

### ORDER

James D. Steffens sued Christopher Nocco, acting in his official capacity as Sheriff of Pasco County, alleging unlawful employment practices and race discrimination. (Doc. 32.) This Court dismissed four of Steffens's five claims based on pleading deficiencies, (Docs. 41, 66), and Sheriff Nocco now moves for summary judgment on the only remaining claim, race discrimination. Because Steffens fails to establish that he suffered an adverse employment action and fails to identify a similarly situated comparator who was treated more favorably, the Court grants summary judgment on the race discrimination claim. Even if Steffens could establish a prima facie case for discrimination, he also fails to rebut as pretext Sheriff Nocco's non-discriminatory reason for inviting his resignation. The Court therefore grants summary judgment on this basis as well.

## I.  BACKGROUND

### A. Facts[1]

The Pasco County Sheriff's Office (PCSO) is the chief law enforcement agency in Pasco County, Florida. (Doc. 75-1 at 1.) Defendant Christopher Nocco has served as the Sheriff of Pasco County since his appointment in May 2011. (*Id.*)

Plaintiff James D. Steffens, a biracial individual, was the chief of forensics and then a captain at the PCSO from March 2013 until he resigned in March 2018. (Doc. 32 at 4; Doc. 72-1 at 5; Doc. 74 at 169–74, 181–82; Doc. 74-11; Doc. 74-13.) Steffens alleges that he was forced to resign because of his interracial romantic relationship with a former PCSO employee, Nancy Sulinski, who is a white woman. (Doc. 32 at 5; Doc. 83 at 11; Doc. 74 at 107, 208.) Steffens and Sulinski married after Steffens left employment with the PCSO. (Doc. 74 at 113.) Before marrying Sulinski, Steffens was in an interracial marriage from 1990 through October 2016. (Doc. 74 at 28, 30.)

Steffens served in law enforcement since at least 1988, working first at the Clearwater Police Department and then at the New Port Richey Police Department before Sheriff Nocco hired Steffens as chief of forensics for the PCSO in March 2013. Sheriff Nocco then promoted him five months later to captain over special operations. (Doc. 72-

---

[1] The Court recounts the undisputed facts as contained in the record. To the extent facts are disputed or capable of multiple inferences, the Court construes the record in favor of the non-movant, Steffens. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020).

1 at 5; Doc. 74 at 169–74, 181–82; Doc. 74-5 at 4; Doc. 74-11; Doc. 74-13.) When Sheriff Nocco hired Steffens, he was aware that Steffens was in an interracial marriage. (Doc. 75-1 at 2.) Beginning in May 2016 until his resignation in March 2018, Steffens's immediate supervisor was then-Major Ken Gregory. (Doc. 75-3 at 1.) Around the same time that Gregory began supervising Steffens, Steffens disclosed to Gregory and Colonel Harrington that he and Sulinski were involved in a romantic relationship. (Doc. 74 at 189–91.) Both expressed their support and excitement for him. (*Id.* at 192.) Later though, Gregory cautioned Steffens about the public appearance of his relationship with Sulinski, as she was a subordinate member of the agency, and he did not want their romantic relationship to give the appearance of impropriety within the PCSO. (Doc. 75-2 at 2–4.)

Two relevant incidents preceded Sheriff Nocco's request for Steffens to resign. On November 22, 2017, a Pasco County resident contacted the PCSO to report an alleged felony "illegal dumping" incident (i.e., that someone had deposited trash in another's dumpster without permission). (Doc. 74 at 227–28; Doc. 75-4 at 1, Ex. 1.) During the initial investigation, Deputy Joseph Mercado, a deputy within Steffens's chain of command, was identified as a suspect. (Doc. 74 at 227–29.) Under PCSO policy, the investigation of a potential criminal act committed by an agency member is to be immediately referred to the Criminal Investigations Division (CID). (Doc. 75-1 at 3.) After Steffens was briefed regarding the incident, he sent multiple deputies to the

complainant's house to determine the extent of the complainant's relationship with Mercado and to ascertain whether the complainant wanted to pursue criminal charges. (Doc. 74 at 227–29; Doc. 75-4 at 1–2.) Steffens did not refer the matter to the CID. (Doc. 74 at 240; Doc. 75-1 at 3.) The officers ultimately obtained a waiver of prosecution from the complainant and, once the complainant executed that waiver, no further investigation was permitted by the CID. (Doc. 75-4 at 7; Doc. 75-3 at 6.)

On December 8, 2017, Deputy Mercado arrested an individual for drug possession. (Doc. 75-3 at 7, 14–15.) During the arrest, Deputy Mercado took a backpack that belonged to the arrestee and threw it over the backyard fence of a nearby residence. (*Id.*; Doc. 74 at 235–37.) A resident subsequently contacted the PCSO to complain that a Sheriff's deputy (Mercado) had thrown a backpack containing drug paraphernalia into her yard. (Doc. 74 at 236–37; Doc. 75-3 at 7.) Steffens was verbally briefed on the incident but again failed to refer the matter to the CID for investigation. (Doc. 74 at 237, 240; Doc. 75-1 at 3; Doc. 75-3 at 7.) Instead, he handled the matter "in house" and Mercado received only verbal counseling. (Doc. 74 at 239–40; Doc. 75-3 at 7.) Two months later, Mercado was terminated after he made unwanted sexual advances toward a female civilian. (Doc. 75-2 at 7.) Mercado was later arrested for evidence tampering in connection with the "backpack" incident following a CID criminal investigation. (Doc. 75-3 at 7.)

In late February 2018, Major Gregory received the investigative file for the "illegal dumping" incident involving Mercado. (Doc. 75-3 at 5.) As he reviewed the file, he became aware for the first time that deputies had obtained a waiver of prosecution from the complainant at Steffens's instruction. (*Id.* at 5–6.) He saw Steffens's decision to send patrol deputies back to the complainant's house, rather than refer the matter to the CID, as giving the appearance that the PCSO was trying to avoid a criminal investigation into one of its members. (*Id.* at 6.) Around this time, Sheriff Nocco, Colonel Harrington, and Major Gregory also became aware of the "backpack" incident for the first time. (Doc. 75-1 at 3; Doc. 75-2 at 33; Doc. 75-3 at 6.) Colonel Harrington asked Major Gregory to find out more information. (Doc. 75-2 at 33.) Major Gregory then asked Steffens to write a memo detailing what occurred surrounding the "backpack" incident. (Doc. 75-3 at 6–8, 14–16.)

On March 8, 2018, Steffens provided the memo to Major Gregory. (*Id.* at 14–16.) Upon receipt of the memo, Major Gregory advised Steffens that "there was going to be an investigation" into the "backpack" incident and that "it did not look good." (*Id.* at 8.)

After discussions with Colonel Harrington, Sheriff Nocco considered Steffens's breach of protocol in not reporting either the backpack incident or the "illegal dumping" incident to the CID to be a serious breach of the public trust. (Doc. 75-1 at 4–5). He lost trust in Steffens's ability to command and requested Major Gregory meet with Steffens to ask if he would like to resign. (*Id.* at 5.)

Later on March 8, Major Gregory carried out that directive in the presence of the PCSO general counsel. (Doc. 75-3 at 9; Doc. 74 at 260.) He told Steffens that Sheriff Nocco had lost confidence in him and that Sheriff Nocco had asked if he would resign, effective immediately. (Doc. 75-3 at 9; Doc. 74 at 261–62.) Steffens responded, "You know what my answer is" and left to prepare his resignation memorandum. (Doc. 74 at 262; Doc. 75-3 at 9; Doc. 74-13.) In the memorandum, Steffens expressed gratitude for working at the Sheriff's Office and stated "[a]s an [a]t-[w]ill [c]ommander, [he] understood that every day . . . is a day that could be [his] last." (Doc. 74-13.) Because Steffens resigned, he left the Pasco Sheriff's Office in good standing and received a payout of his vacation leave. (Doc. 74 at 264; Doc. 75-2 at 9.) Following Steffens's resignation, Sheriff Nocco promoted an officer in an interracial marriage to replace Steffens. (Doc. 74 at 247; Doc. 75-1 at 6.)

## B. Procedural History

After Steffens submitted his resignation, he filed this lawsuit. (Doc. 1.) The Amended Complaint alleged five counts, (Doc. 32), four of which the Court dismissed with prejudice. (Docs. 41, 66.) But the Court determined that Steffens sufficiently alleged race discrimination under Title VII and discovery proceeded on that claim. Sheriff Nocco now moves for summary judgment on the ground that Steffens fails to establish a prima facie case of race discrimination and, in the alternative, fails to rebut his legitimate reason for asking Steffens to resign. (Doc. 72.)

## II.   LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A moving party is entitled to summary judgment when the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When that burden is met, the burden shifts to the nonmovant to demonstrate that there is a genuine issue of material fact, which precludes summary judgment. *Id.* The nonmoving party must "go beyond the pleadings" and point to evidence in the record that demonstrates the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. The Court reviews all the record evidence and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers*, 946 F.3d at 1262.

7

## III.   ANALYSIS

Sheriff Nocco first argues that he is entitled to summary judgment because Steffens doubly fails to establish a prima facie case of discrimination: Steffens cannot prove he suffered an adverse employment action and cannot identify a similarly situated comparator. (Doc. 72 at 3–12.) Alternatively, Sheriff Nocco argues he is entitled to summary judgment because Steffens cannot rebut the articulated reason for inviting Steffens to resign— namely, that Sheriff Nocco lost confidence in Steffen's ability to do his job after Steffens mishandled multiple allegations of internal misconduct by an officer under his command. (Doc. 72 at 12–17.)

Title VII of the Civil Rights Act of 1964 prohibits discrimination by covered employers on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. To survive summary judgment, a plaintiff alleging intentional discrimination under Title VII must present sufficient facts to permit a jury to rule in his favor. There are two ways that Steffens can do so. The first is for Steffens to present direct evidence of discriminatory intent. *See, e.g., Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 921–22 (11th Cir. 2018). That means of proof is infrequently available, and Steffens does not argue that he has presented direct evidence of discrimination. (Doc. 83 at 10.) The second (and far more common) way to show discriminatory intent is based on circumstantial evidence

using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

## A. Steffens Fails to Establish a Prima Facie Case of Discrimination

When proceeding under *McDonnell Douglas*, Steffens bears the initial burden of making out a prima facie case of discrimination by showing that (1) he belongs to a protected class, (2) he was subjected to an adverse employment action, (3) he was qualified to perform the job in question, and (4) his employer treated "similarly situated" employees outside his class more favorably. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc) (citing *Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir. 1997)); *see also Castillo v. Allegro Resort Mktg.*, 603 F. App'x 913, 917 (11th Cir. 2015) (per curiam) (noting the *McDonnell Douglas* burden-shifting analysis "is an evidentiary standard" that applies to "summary judgment motions and beyond").

Sheriff Nocco does not contest that Steffens's interracial relationship with Sulinski is protected under Title VII or that Steffens was qualified for the job. (Doc. 72 at 4.) Instead, he argues that Steffens fails to show that he suffered an adverse employment action or to identify a "similarly situated" comparator. (Doc. 72 at 4, 12.)

### 1.  Steffens Did Not Suffer an Adverse Employment Action

Sheriff Nocco argues that Steffens's decision to resign rather than to remain at the Sheriff's office was not an adverse employment action and that "there is no evidence that

9

Steffens resigned under duress or through misrepresentation." (Doc. 72 at 5–6.) Sheriff Nocco additionally argues that Steffens cannot point to any other potentially adverse employment actions that Steffens raised in his administrative charge of discrimination with the Equal Employment Opportunity Commission (EEOC). (*Id.* at 8–9.)

In response, Steffens contends that he suffered multiple adverse employment actions, including alleged failures to promote. (Doc. 83 at 11.) Steffens also argues he was forced to resign under coercion or duress because of his interracial relationship and that Sheriff Nocco had no grounds for the termination whatsoever. (Doc. 83 at 11–13.) Further, Steffens claims he was not given an opportunity to consult with legal counsel and was not provided enough information to make an "informed decision" on resignation, thus evidencing duress and rendering his resignation a constructive discharge. (Doc. 83 at 12–15.)

At the outset, Steffens failed to raise several of the actions he claims constitute adverse employment actions in his EEOC Charge. As a general rule, "[n]o action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." *Thomas v. Miami Dade Public Health Tr.*, 369 F. App'x 19, 22 (11th Cir. 2010) (per curiam) (quotation omitted). One exception allows courts to hear charges "[i]f the allegations of the subsequent complaint could have been a reasonably expected out-growth of the EEOC's investigation of the charged

conduct." *Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1351–52 (S.D. Fla. 1999); *see also Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989).

Here, Steffens filed a single charge of discrimination on May 17, 2018, alleging that he was "coerced into resigning . . . in retaliation for serving as a witness in the Internal Affairs investigation and because [he] maintained a relationship with [his] fianc[ée] . . . ." (Doc. 74-3.) But Steffens did not raise several other potential adverse employment actions in his EEOC charge that he now raises in his response (e.g., failure to promote to major five separate times). (Doc. 83 at 11.) And Steffens's allegation that he was coerced into resigning is not "reasonably related" to the multiple separate failure-to-promote allegations such that those incidents would have been uncovered as a "reasonably expected out-growth of the EEOC's investigation of the charged conduct." *Buzzi*, 62 F. Supp. 2d at 1351–52; *cf. Booth v. Pasco Cnty.*, 829 F. Supp. 2d 1180, 1193 (M.D. Fla. 2011) (Moody, J.) (concluding charges not raised in the EEOC complaint were "reasonably related" to the EEOC charge). Therefore, the Court considers only Steffens's resignation as a potential adverse employment action.

In the Eleventh Circuit, "employee resignations are presumed to be voluntary" but a "constructive discharge" is recognized as involuntary. *Johnson v. Fla. Dep't of Corr.*, 829 F. App'x 889, 893 (11th Cir. 2020) (per curiam) (quoting *Hargray v. City of Hallandale*, 57 F.3d 1560, 1567–68 (11th Cir. 1995) (per curiam)). Steffens argues that he was

11

constructively discharged because he was forced to resign under coercion or duress. (Doc. 83 at 11–15.)

"Under the duress theory, this Court objectively considers, under the totality of the circumstances, whether 'the employer's conduct in obtaining the employee's resignation deprived the employee of free will in choosing to resign.'" *Johnson*, 829 F. App'x at 895 (quoting *Hargray*, 57 F.3d at 1568). Although not dispositive, there are several factors courts should consider in making the totality-of-the-circumstances determination: "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel." *See Hargray*, 57 F.3d at 1568; *id.* at 1570 (clarifying that whether a resignation was involuntary due to coercion or duress is a "legal conclusion" for the Court to decide); *see also Carpenter v. Univ. of Ala. Health Servs. Found. PC*, 773 F. App'x 507, 511–12 (11th Cir. 2019) (per curiam) (concluding that, under the totality of the circumstances, the plaintiff "was not forced to resign"). Here, after considering these factors and the totality of the circumstances, the Court concludes that Steffens was not forced to resign under duress.

12

First, Steffens had an alternative to resignation. On March 8, 2018, when Steffens handed Major Gregory his report on the "backpack" incident, Major Gregory told Steffens that "there was going to be an investigation" into the "backpack" incident and "that it did not look good." (Doc. 75-3 at 8, 14; Doc. 74 at 259.) Later that day, when Major Gregory (in the presence of the PCSO general counsel) told Steffens that Sheriff Nocco had lost confidence in him and that Sheriff Nocco had asked if Steffens would resign immediately, Steffens told Major Gregory, "You know what my answer is" and went to prepare his letter of resignation. (Doc. 75-3 at 9.) Steffens, in his deposition, conceded that he understood at that time "that the only alternative [to resignation] available . . . was to face th[e] investigation" and that if he had chosen to stay the investigation against him may not have resulted in any disciplinary action. (Doc. 74 at 262, 265.) Steffens's statement to Major Gregory, his behavior during his resignation, and his statements that he understood his two alternatives at the time support the conclusion that Steffens comprehended the decision at hand: either resign or "stand pat and fight." *Johnson*, 829 F. App'x at 895 (quoting *Hargray*, 57 F.3d at 1568). Of course, "[r]esignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges." *Id.* (quoting *Hargray*, 57 F.3d at 1568); *Ross v. City of Perry*, 396 F. App'x 668, 670 (11th Cir. 2010) (per curiam). Simply because an employee faces two "unpleasant

alternatives" does not render his choice of resignation involuntary. *Hargray*, 57 F.3d at 1568 (quotations omitted).

Steffens points the Court to no evidence that he requested (and was denied) the opportunity to consult with an attorney. *See Carpenter*, 773 F. App'x at 514 (noting that the advice-of-counsel factor "carries little weight" where no one prevents the plaintiff from consulting with a lawyer). True, Steffens was invited to resign "effectively immediately" and was denied the opportunity to speak with Sheriff Nocco following his conversation with Major Gregory. (Doc. 74 at 261–63.) But unlike situations where courts have found duress, *see, e.g.*, *Hargray*, 57 F.3d at 1570 (requiring plaintiff to sign resignation letter before being allowed to leave the interrogation room or criminal charges would be filed immediately and denying requests to consult an attorney can render a resignation involuntary), Steffens's allegations of coercion fall far short of duress. He simply did not like the choices offered; he was not deprived though of his free will to elect resignation over internal investigation.

Thus, the Court concludes that Steffens has failed to identify an adverse employment action.

### 2.  Steffens Fails to Identify a Similarly Situated Comparator

To satisfy his prima facie burden of proving that Sheriff Nocco treated a similarly situated employee better, Steffens points to a single individual—Captain Terry

Edmonson—and argues he and Captain Edmonson were treated very differently even though Steffens claims the only differences between them are that Edmonson is a white male and was not in an interracial relationship. (Doc. 83 at 17.) Sheriff Nocco responds that Terry Edmonson is not a valid comparator because Captain Edmonson was not facing an investigation into alleged misconduct at the time of his resignation, unlike Steffens. (Doc. 84 at 7.)

"[A] plaintiff asserting an intentional-discrimination claim under *McDonnell Douglas* must demonstrate that she and her proffered comparators were 'similarly situated in *all* material respects.'" *Lewis*, 918 F.3d at 1218 (emphasis added). Although this standard is "worked out on a case-by-case basis, in the context of individual circumstances," *id.* at 1227, ordinarily, a similarly situated comparator "in all material respects" will "(1) have engaged in the same basic conduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have been under the jurisdiction of the same supervisor as the plaintiff; (4) and share the plaintiff's employment history," *Earle v. Birmingham Bd. of Educ.*, 843 F. App'x 164, 166 (11th Cir. 2021) (per curiam) (citing *Lewis*, 918 F.3d at 1227–28); *see also Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016) (explaining that "[d]ifferences in experience and disciplinary history" can disqualify a plaintiff's proffered comparators). "A plaintiff's failure to produce evidence showing that a single similarly situated employee was treated more favorably will

15

preclude the establishment of a prima facie case." *Earle*, 843 F. App'x at 166 (citation omitted). In other words, a plaintiff and a comparator must be sufficiently similar such that they "cannot reasonably be distinguished." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015).

Steffens and Captain Edmonson are not similarly situated in all material respects. Captain Edmonson resigned under very different circumstances than Steffens: Captain Edmonson resigned to pursue a business opportunity and remained with the Sheriff's Office as a reserve deputy following his resignation. (Doc. 84-1 at 1.) In contrast, Steffens resigned rather than face an investigation into the allegations that he mishandled criminal complaints involving his subordinate and violated policy by failing to report those criminal complaints. (Doc. 74 at 262; Doc. 75-3 at 9; Doc. 74-13.) Because Steffens resigned in the face of allegations that he had violated Sheriff's Office policy and mishandled criminal complaints—while Captain Edmonson resigned to pursue a business opportunity without the cloud of impending internal investigations—the two "can[] reasonably be distinguished." *Young*, 575 U.S. at 231; *see also Okwan v. Emory Healthcare, Inc.*, No. 20-11467, 2021 WL 4099236 (11th Cir. Sept. 9, 2021) (holding the plaintiff failed to put forth a similarly situated comparator where the one had more serious documented performance issues than the other). Thus, they engaged in fundamentally different conduct preceding their resignations and are not the same in all material respects.

The Court grants Sheriff Nocco's motion for summary judgment because Steffens fails to make out a prima facie case for discrimination.

## B. Steffens Does Not Show Sheriff Nocco's Legitimate, Nondiscriminatory Reason was Pretext

If Steffens had succeeded in making out a prima facie case of race discrimination, the burden would next shift to Sheriff Nocco to articulate a legitimate, nondiscriminatory reason for his actions. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). Sheriff Nocco readily presents such a reason. Namely, Sheriff Nocco states that he lost confidence in Steffens after he mishandled two criminal complaints involving former Deputy Joseph Mercado surrounding the "illegal dumping" incident and the "backpack" incident. (Doc. 72 at 13; Doc. 75-1 at 4–5.) More specifically, Steffens's failure to refer either criminal complaint to the CID was contrary to agency policy and Sheriff Nocco considered these failures to be "a breach of the public's trust as it gave the appearance that the Sheriff's Office was not willing to hold its members accountable and investigate criminal complaints involving its own employees." (Doc. 72 at 14; Doc. 75-1 at 4–5.)

Considering Sheriff Nocco's legitimate, nondiscriminatory reason, the burden then shifts back to Steffens to show that the proffered reason was merely a pretext for unlawful discrimination, an obligation that "merges with the [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see Lewis*, 918 F.3d at 1221. If the defendant's "proffered reason

17

is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc); *see Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) ("'[T]o avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination.' A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (quotations omitted) (alterations in original)). To establish pretext, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotations omitted).

Sheriff Nocco argues that Steffens fails to point to evidence suggesting the Sheriff's Office's articulated reasons for offering him the opportunity to resign is a pretext for discrimination based upon Steffens's interracial relationship. (Doc. 72 at 15–16.) In response, Steffens explains that he reported the incidents forming the basis for the criminal complaints to his superiors and that he believed an investigation was underway. (Doc. 83 at 18–19.) He argues that he briefed Major Gregory immediately after the "illegal dumping

incident" and that it was Major Gregory and Deputy Mercado's immediate supervisors who decided to handle the discipline for the "backpack" incident in house and to give a verbal reprimand to Deputy Mercado, rather than him. (*Id.*) But Steffens does not show (or even argue) that he followed PCSO protocol in handling the two incidents, which formed the core basis for Sheriff Nocco's request of resignation.

Thus, even if true that Steffens believed others decided how to handle Mercado's misconduct, he fails to establish that the reasons offered by Sheriff Nocco are pretext. He must directly confront those reasons and show they are inconsistent, implausible, or incoherent such as to be unworthy of credence. *See Combs*, 106 F. 3d at 1538; *see Kirkland v. City of Tallahassee*, 856 F. App'x 219, 224 (11th Cir. 2021) (per curiam) (dismissing plaintiff's suggestion of pretext when "he failed to introduce any evidence that was inconsistent" with the employer's asserted reason and instead tended to support it). Steffens's conclusory assertions that he has the "ability" to show Sheriff Nocco's reasons are "pretextual" misses the point—he needs to show that they are pretext at this stage to survive summary judgment. (Doc. 83 at 19); *see Young v. Gen. Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988) (holding that conclusory allegations, without more, are insufficient to raise an inference of pretext). The undisputed facts are that (1) Steffens never reported Mercado's "illegal dumping" and "backpack" incidents to the CID as required by PCSO policy; (2) Steffens directed his deputies to visit the "illegal dumping" victim where they

obtained a waiver of prosecution; and (3) under Steffens's leadership, Officer Mercado received only a generic verbal warning for actions that later led to his arrest for evidence tampering. (Doc. 74 at 227–29, 237–40; Doc. 75-4 at 1–2, 7; Doc. 75-3 at 7.) Steffens fails to "controvert[]" these facts, meaning the Court "deem[s]" them "admitted." (Doc. 45 at 3.) And from these undisputed facts, a reasonable fact finder could not conclude that Sheriff Nocco's proffered reason for inviting Steffens to resign—based on Steffens's actions and inactions in the undisputed record—was pretextual. At bottom, Steffens's disagreement with Sheriff Nocco's decision to hold him responsible for mishandling the Mercado incidents does not establish that the proffered "reason was false." *Brooks*, 446 F.3d at 1163 (quotation omitted); *see Ward v. Troup Cnty., Sch. Dist.*, 856 F. App'x 225, 227 (11th Cir. 2021) (per curiam) (noting that courts do not sit as "super-personnel" departments that question the wisdom of an entity's business decisions (quotation omitted)); *Bailey v. Huntsville*, 517 F. App'x 857, 864 (11th Cir. 2013) (per curiam) ("A plaintiff cannot show pretext by recasting an employer's proffered non-discriminatory reasons or substituting her business judgment for that of the employer's."). As a result, Steffens fails to show that Sheriff Nocco's reason was pretext.

Further, Steffens also fails to point the Court to any evidence that would permit a reasonable jury to find that his relationship with Sulinski was "the real reason" Sheriff Nocco asked for his resignation. *Brooks*, 446 F.3d at 1163 (quotation omitted). For

purposes of summary judgment, the Court accepts as true Major Gregory's alleged statements that Steffens was not to attend public events with Sulinski and former PCSO Lieutenant Art Fremer's statement that he heard a "rumor" that PCSO employees were threatened to avoid Steffens's wedding to Sulinski. (Doc. 83 at 16; 83-4 at 23–24.) But these statements are immaterial because the undisputed facts show that Major Gregory played no part in Sheriff Nocco's decision to ask for Steffens's resignation. (Doc. 75-1 at 5 ("Major Gregory did not offer his opinion about what consequences, if any, there should be to Steffens for the manner he mishandled the Mercado incidents. [Sheriff Nocco] did not solicit his opinion.").) Additionally, there is no evidence that Sheriff Nocco, the relevant decisionmaker, told anyone to avoid Steffens's wedding and the person whom Fremer alleges told him about the "rumor" now denies making the statement. (Doc. 75-5 at 2; Doc. 83-4 at 24.) Regardless, Steffens offers no evidence that any of these alleged discriminatory statements caused Sheriff Nocco's decision to invite his resignation. *Crawford v. City of Fairburn*, 482 F.3d 1305, 1309 (11th Cir. 2007) ("By failing to rebut each of the legitimate, nondiscriminatory reasons of the [employer], [the employee] has failed to raise a genuine issue of material fact about whether those reasons were pretext for discrimination."). Steffens thus fails to provide evidence from which a reasonable jury could find that discrimination was "the real reason" Sheriff Nocco invited his resignation. *Brooks*, 446 F.3d at 1163 (quotation omitted).

In the absence of evidence showing that Sheriff Nocco's stated non-discriminatory reason for inviting Steffens to resign is a pretext, the Court grants summary judgment to Sheriff Nocco on this alternative ground.

## IV.   CONCLUSION

Because Steffens fails to set forth a prima facie case for discrimination, the Court grants summary judgment to Sheriff Nocco. Alternatively, the Court grants summary judgment to Sheriff Nocco because, even if Steffens could establish a prima facie case, he fails to rebut Sheriff Nocco's nondiscriminatory reason for inviting him to resign. Accordingly, the following is **ORDERED**:

1.   Sheriff Nocco's Motion for Summary Judgment (Doc. 72) is **GRANTED**.

2.   The Clerk is directed to terminate any pending motions and deadlines, enter judgment in Sheriff Nocco's favor, and close this case.

**ORDERED** in Tampa, Florida, on January 14, 2021.

Kathryn Kimball Mizelle
United States District Judge